IN THE MATTER OF THE PETITION OF THE NEW YORK ELEVATED RAILWAY COMPANY.*

*Municipal corporations — railroad companies in — Local laws — Eminent domain — chap.* 606 *of* 1875 — *construction of — Const., art.* 3, § 18.

THIS was an application for the confirmation of the report of commissioners, appointed pursuant to section 6 of chapter 606 of the Laws of 1875, to determine whether a railway, the route of which had previously been designated by other commissioners, ought to be constructed or operated.  The commissioners who laid out the route of the railway were appointed by the mayor of the city of New York, in conformity to the provisions contained in the first section of that

* This case was decided April 15, 1876.

act. The railway was laid out by them through certain streets of the city. The consent of the local authorities having charge and control of the streets over which the route of the railway as it was approved ran, was secured for its construction and operation, but that of a majority in value of the property owners on the streets, which was required by section 4, chapter 606 of 1875, and article 3 section 18, of the Constitution, was refused; and it was for that reason the commissioners were appointed, pursuant to the provisions of the statute and the Constitution, to hear them. The commissioners made their report, stating that they had heard the parties opposing the railway, and, subject to certain qualifications, it ought to be constructed and operated. These parties objected to the confirmation of the report, on the ground that the act was local in its character, and for that reason within the constitutional provision forbidding the enactment of various local laws, because of local restrictions imposed upon its general provisions, by which it was declared that the railways which it authorized should not be constructed or operated in certain streets in certain cities. The court *held*, that there was nothing in the Constitution which deprives the legislature of the power of making local exceptions in general laws; that it was a power which has been frequently exercised without creating a doubt concerning its constitutional propriety, and that to render a law general it was not necessary that it should apply with the same effect to every locality in the State. (*People* v. *Hills*, 35 N. Y., 449, 451; *People* v. *O'Brien*, 38 id., 193, 194, 195; *People* v. *Supervisors of Chautauqua*, 43 id., 11.) And that, even if the local exceptions could not be made as they were declared, they would not render the act a nullity, but would be, in themselves, inoperative. (*People* v. *McCann*, 16 id., 58, 60, 61.) The court further *held*, that under the provisions of the statute (§§ 18–26) private property could only be acquired for the use of the corporation by making compensation for it to the owner; the interest in the land used for streets and highways, not owned by the public, could only be appropriated for the purposes of the railway in the manner they provide for. (*Williams* v. *The New York Central R. R.*, 16 N. Y., 97.) That in the case of streets in the city of New York, laid out and opened under the act of 1813, no such interest in the land used by them remains in the

adjacent owners; and over them the legislature had the power to provide for the construction of a railway without further compensation. (*People* v. *Kerr*, 27 N. Y., 188.) That the provisions of subdivision 5, section 26 of chapter 606 of 1875 are so broad that they confer upon the railway corporation, by which the road was to be constructed and operated, complete authority to use the streets and avenues through which the route might be laid, without compensation, when the title to the land made use of, was not owned by individuals, but has been vested in and paid for by the public. That where individual property might be so appropriated, compensation must be made for the additional burdens imposed upon it, beyond those required for the purposes of the street or avenue used, but not otherwise. That the right to such compensation had been fully protected by the statute. That the act of 1875 was not defective, because no particular description of railroad was designated in it; the legislative power was left uncontrolled upon that subject, and where that is the case the authority of the legislature is supreme. (*People* v. *Flagg*, 46 N. Y., 401.) The act of 1875 does not require that the consent rendered essential by the statute, or the report of the commissioners appointed by the General Term and confirmed by the court, should be secured within sixty days. The statute requires simply that the commissioners should, within sixty days after their organization, " fix and determine the route or routes for such steam railway or railways." (Laws of 1875, chap. 606, §§ 4, 38.) In any event, that the time within which a public act is required to be performed is not mandatory, but directory, and a literal observance of the direction as to time is not indispensable to the validity of the act. (*Wood* v. *Chapin*, 3 Kernan, 509; *Matter of Empire City Bank*, 18 N. Y., 200; *People* v. *Cook*, 4 Seld., 69; *Barnes* v. *Badger*, 41 Barb., 98, 99.) That the fact that the commissioners, appointed by the court to determine whether the road laid out ought to be built, were selected without notice to the persons owning property upon the streets, was not an irregularity, as neither the Constitution nor the statute required that any preceding notice should be given or served. (Art. 3, § 18 of Const.) As the manner in which the hearing before the commissioners was to be conducted was defined by neither the statute nor the Constitution, it was necessarily placed in the control of the

court and the commissioners. A notice given on the fifteenth for the twenty-sixth of January by publication in seven daily papers and posting in 114 conspicuous places along the route of the proposed railway was, under the circumstances, sufficient. It was objected that the commissioners declined to allow the witnesses to be orally examined before them, but the court *held*, that they were nowhere required to do so; they were simply to hear those opposed to the railway on the route selected for it. How they should be heard was not declared. Neither were the commissioners confined to any particular species of evidence. They were necessarily left very much at liberty, in that respect, and could hear all that should appear to be pertinent to the inquiry they were to make, even if it should not be in the form received by courts of justice. A due hearing was what was secured, and that could as well be had by affidavits stating the facts, as by oral evidence formally given. The statute and the Constitution were both entirely silent as to the course which should be pursued in hearing the parties; and whatever was adequate to secure the hearing mentioned was clearly sufficient for the purpose. How it could be best secured and promoted was necessarily dependent upon the judgment and discretion of the commissioners; and as long as that was not abused, but was completely effectual, no substantial ground for complaint could exist against the course of proceeding which they prescribed. The commissioners qualified their report by the restriction that the railway should be constructed over the center of Third avenue, and that in all other streets and avenues, the columns for it should be so located in the roadway, wherever that was practicable, and the alignment and other circumstances would properly admit it; and that in streets not exceeding thirty feet in width, between the curbs, it should not be constructed with a row of columns on the line of each curb, and a superstructure with a track upon each row of columns, but in one of the other methods designated by the commissioners selecting the route. This, however, they at the same time declared should be without prejudice to the right of the New York Elevated Railroad Company, which, under the statute, was given the right to build and operate the road, "to construct said railway, in any mode provided for in the specifications adopted by said commissioners, over and along such portion of said route, in

respect to which they should first have had and obtained the consent, in writing, to such mode of construction from the owners of one-half in value of the property bounded on that portion of such route, over and along which the petitioners should desire to construct said railway in the manner lastly hereinbefore mentioned." The court held that the commissioners could properly impose these restrictions upon the road ; that the power to determine that the railroad ought to be built, would include the authority to add so necessary a qualification to the determination ; and further *held*, that the expression, laying out the *route along the streets*, would legally cause it to pass over the center, those being terms of legal signification which have been construed to designate the center of the street or highway referred to by them. (*Jackson* v. *Hathaway*, 15 Johns., 447, 454 ; *Child* v. *Starr*, 4 Hill, 369, 373 ; *Bissell* v. *N. Y. Cent. R. R. Co.*, 23 N. Y., 61 ; *The Seneca Nation of Indians* v. *Knight*, id., 498.) The commissioners reported further, that a route of connection, commencing at Ninety second street and Ninth avenue, extending along that street to Eighth avenue, and through that avenue and other streets, and along the Harlem river to High bridge, and to the depot of the New York, Boston and Montreal Railroad, and to the depot of the Spuyten Duyvil and Port Morris Railroad, ought not, as a whole, to be constructed or operated. The court *held*, that this was in the nature of an independent road, not forming any necessary portion of the other route selected, and it was not improperly made the subject of separate determination.

*Henry E. Davies, James Emott, A. J. Vanderpoel* and *Edward C. Delavan*, for the petitioner.

*Saml. G. Geliffe*, for J. M. Hartshorne.

*Wheeler H. Peckham, John E. Parsons* and *Joseph H. Choate*, opposed.

Opinion by Daniels, J.

Davis, P. J., and Brady, J., concurred.

Report of commission affirmed.